UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

TERRELL JOHNSON,

       Defendant.

_____

REPORT & RECOMMENDATION

06-CR-6134L

## **PRELIMINARY STATEMENT**

    By Order of Hon. David G. Larimer, United States District Judge, dated January 11, 2007, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 26).

    Defendant Terrell Johnson is charged in a two-count indictment.  The first count charges Johnson with distributing and possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  The second count of the indictment charges Johnson with possessing a firearm in furtherance of the drug trafficking crime charged in the first count, in violation of 18 U.S.C. § 924(c)(1).  Both counts allege that the charged crime occurred on or about June 16, 2006.  (Docket # 10).

    Currently before this Court for Report and Recommendation is Johnson's motion to suppress statements made by him during an interview at the Monroe County Public Safety Building on the grounds that such statements were obtained in violation of his Fifth Amendment rights.  Johnson also moves to suppress tangible evidence seized pursuant to the execution of a

search warrant for 271 Champlain Street, downstairs apartment. According to Johnson, the application submitted in support of the search warrant was insufficient to establish probable cause for the search. (Docket # 16).[1]

## FACTUAL BACKGROUND

On June 16, 2006, officers with the Rochester Police Department executed a search warrant issued by Monroe County Court Judge Frank P. Geraci, Jr. for 271 Champlain Street, downstairs apartment, in the City of Rochester. In support of his motion to suppress tangible evidence, Johnson has submitted a copy of the search warrant for this Court's review, as well as the affidavit offered in support of the warrant application. (Docket # 16-2). An evidentiary hearing was also conducted before this Court on October 4, 2006, relating to Johnson's motion to suppress statements. (Docket # 23).

**Search Warrant for 271 Champlain Street**

On June 13, 2006, Judge Geraci authorized a search of 271 Champlain Street, downstairs apartment for, *inter alia*, cocaine and cocaine paraphernalia, evidence of cocaine sales and firearms. (Docket # 16-2). The search warrant application included an affidavit submitted by Rochester Police Officer David Swain that described two controlled purchases of cocaine conducted through a window on the east side of the location. (Docket # 16-2 ("Swain Aff.")). Specifically, Swain affirmed that on June 5, 2006, he and Rochester Police Officer David

---

[1] Johnson's omnibus motions also sought, *inter alia*, discovery and inspection, *Brady* material, *Jencks* material, rulings on evidentiary matters under Rules 404 and 609 of the Federal Rules of Evidence and notice pursuant to Federal Rule of Criminal Procedure 12(b)(4). (Docket # 16). Each of these requests was either resolved by the parties or decided in open court by the undersigned on September 25, 2006. (Docket ## 18, 19).

2

Simpson met with a confidential informant for the purpose of conducting a controlled purchase of cocaine from 271 Champlain Street. According to Swain, the confidential informant had previously provided reliable information that had led to various arrests and narcotics seizures. (Swain Aff. at 3). In addition, Swain affirmed that a utilities check with Rochester Gas and Electric records confirmed that 271 Champlain Street was "considered a downstairs apartment." (Swain Aff. at 6).

Before the controlled purchase was conducted, Swain searched the confidential informant to ensure that he did not possess contraband.[2] (Swain Aff. at 4). Finding none, Swain provided the informant with twenty dollars with which to purchase narcotics. At approximately 12:02 p.m., Swain observed the informant exit the undercover vehicle and walk directly to the east side of 271 Champlain Street and then toward the rear of the residence. Approximately three minutes later, he observed the informant walk back to the police vehicle. When he returned, the informant provided Swain with four small, brown plastic zip-lock bags containing "a white/yellow rock-like substance" later determined to be cocaine. (Swain Aff. at 4).

The informant advised the officers that he had walked to the side of 271 Champlain Street and had knocked on a boarded window. The informant then had a brief conversation with an unknown male voice regarding the purchase of cocaine. According to the informant, he handed twenty dollars to a black, male hand through a small hole in the bottom of the window, in return for which he was handed the cocaine. (Swain Aff. at 4).

---

[2] For ease of reading, this Court will use the male pronoun to refer to the confidential informant, whose gender has not been identified by the government.

Three days later, on June 8, 2006, at approximately 1:30 p.m., Swain and Simpson again met with the same confidential informant for the purpose of conducting another controlled purchase of cocaine. As before, the informant was searched to ensure that he did not possess any contraband and this time was provided with ten dollars. (Swain Aff. at 5). At approximately 1:38 p.m., Swain observed the informant leave the undercover vehicle and approach a boarded window on the east side of 271 Champlain Street. At 1:42 p.m., the informant returned to the vehicle and provided the officers with two small, clear plastic zip-lock bags containing cocaine. (Swain Aff. at 5).

The informant reported to the officers that he had walked to the side window at 271 Champlain Street and had spoken with an unknown black male about purchasing cocaine. The informant then slid the ten dollars that had been provided through a crack in the base of the window and, in exchange, received a small clear plastic zip-lock bag containing cocaine.[3] (Swain Aff. at 5-6).

**Suppression Hearing**

On October 4, 2006, this Court conducted an evidentiary hearing on Johnson's motion to suppress statements. During that hearing, the government presented the testimony of Officer Simpson. No witnesses were called by the defense. (Docket # 23). Based upon that testimony, this Court finds the following.

---

[3] Officer Swain affirms in his affidavit that the informant reported purchasing one bag of cocaine from 271 Champlain Street on June 8, 2006, although Swain affirms receiving two bags of cocaine from the informant when he returned to the undercover vehicle.

On June 16, 2006, Officer Simpson participated in the execution of a search warrant for 271 Champlain Street, downstairs apartment. (Tr. 5).[4] During the course of that search, Johnson was arrested and transported to the Monroe County Public Safety Building. (Tr. 6). At approximately 10:10 a.m., Simpson entered the interview room in which Johnson had been placed. After removing Johnson's handcuffs, Simpson introduced himself and asked Johnson about his background and his family – a conversation that lasted approximately four minutes. (Tr. 6, 17-18).

At that point, Simpson advised Johnson of his *Miranda* rights by reading the rights from a *Miranda* waiver card. (Tr. 7-8; G.Ex. 1). Specifically, Simpson advised Johnson:

> You do not have to say anything. If you do, anything you do say
> can be used against you in a court of law. You have the right to
> talk to a lawyer before answering any questions and have him here
> with you. If you can't pay for a lawyer, one will be given to you
> before any questioning if you wish. If you do wish to talk with me,
> you can stop me at any time.

(Tr. 8). After reading the warnings, Simpson asked Johnson whether he understood his rights, and Johnson responded, "Yes." (Tr. 9). Simpson then asked whether, with such rights in mind, Johnson wished to speak with him. Johnson replied, "Yeah," and Simpson recorded his answers on the *Miranda* waiver card. (Tr. 8-9). Simpson further testified that Johnson did not appear to be under the influence of alcohol or drugs, appeared to understand what was being said to him and responded in an appropriate manner to the questions posed to him. (Tr. 9).

---

[4] The transcript of the suppression hearing conducted before this Court on October 4, 2006, shall hereinafter be referenced as "Tr. __." (Docket # 25).

During the subsequent interview, Simpson asked Johnson why he was in the apartment at 271 Champlain Street at the time of the search. Johnson explained that he lived with his mother at 271 Frost Avenue, but had been staying at 271 Champlain Street for the previous two days following an argument with her. (Tr. 10, 20). Johnson stated that he had been staying in the middle bedroom where he had been taken into custody and that the male clothing found in that room belonged to him. (Tr. 10, 22).

Simpson thereafter questioned Johnson regarding narcotics activity at 271 Champlain Street. Johnson stated that he had been aware of such activity at 271 Champlain Street, but denied any personal involvement. (Tr. 10, 20-21). Simpson confronted Johnson with information that an undercover officer had purchased crack cocaine from the apartment and had identified a ring that Johnson was wearing and his clothing as having been on the person who had sold him narcotics. (Tr. 11, 25). Johnson then became agitated, indicated that he did not want to continue to talk and asked, "How are you going to charge me, with the sale?" (Tr. 11). Simpson testified that the interview concluded at that time. (Tr. 11).

Simpson testified that the entire interview with Johnson lasted approximately half an hour. According to Simpson, no promises or threats were made to Johnson to induce him to speak, nor did he request the presence of an attorney at any time during the interview. (Tr. 11-12).

**REPORT AND RECOMMENDATION**

Johnson moves to suppress evidence seized from 271 Champlain Street on the grounds that the search warrant for that residence was unsupported by probable cause. In

addition, Johnson also moves to suppress statements he made during the interview with Officer Simpson following his arrest. (Docket # 16).[5] For the following reasons, it is the recommendation of this Court that both motions be denied.

## I. Suppression of Tangible Evidence

Johnson argues that the evidence seized during the search of the downstairs apartment at 271 Champlain Street should be suppressed because the affidavit offered in support of the warrant did not adequately demonstrate probable cause to believe that unlawful activity was occurring in the location to be searched. (Docket # 16). Specifically, Johnson argues that "[t]here was no connection made to indicate that the location sought to be searched was the same as the location where the controlled buys occurred." (Docket # 16). For the reasons discussed below, I disagree.

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement. According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of

---

[5] The government argues that Johnson lacks standing to challenge the search of the apartment at 271 Champlain Street. (Docket # 17). Upon the affidavit submitted by Johnson (Docket # 20), I find that he was an overnight guest who had an expectation of privacy in the residence. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (overnight guest has legitimate expectation of privacy in host's home); *United States v. Fields*, 113 F.3d 313, 320 (2d Cir.) ("society recognizes as legitimate the expectation of privacy possessed by an overnight guest – even though he has at best a fleeting connection to his host's home") (citing *Minnesota v. Olson*, 495 U.S. at 98), *cert. denied*, 522 U.S. 976 (1997).

knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. A reviewing court's obligation is merely to determine that the issuing judge had a "'substantial basis for...conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. at 238-39) (internal quotation omitted). Moreover, "resolution of marginal cases should be determined by the preference to be afforded to warrants." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 270 (1960)).

In addition, the Fourth Amendment further requires that a search warrant "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The reason for this "particularity" requirement is to prevent general searches. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* at 84.

Turning to the search warrant at issue in this case, I find first that the location to be searched – 271 Champlain Street, downstairs apartment – is described with sufficient particularity.[6] The affidavit in support of the warrant describes the property to be searched as

> [O]ne half of a multi family unit, two and one-half stories high.
> 271 Champlain Street is a wood framed building maroon in color

---

[6] The warrant and application both include "downstairs apartment" as a handwritten notation, initialed by the affiant and the issuing judge, following the identification of the property to be searched as 271 Champlain Street. Presumably, the notation was included to ensure that the warrant was limited to the building's downstairs apartment only.

>with gray trim. The numbers 271 is affixed on the front of the
>location. The dwelling is on the south side of the street and faces
>north. The location can be accessed via the front door.

(Swain Aff. at 1). In other words, the application identifies 271 Champlain Street as the downstairs apartment of a multi-family residence housed in a two and one-half story, wood-framed building. Any ambiguity about the identification is clarified by Officer Swain's affirmation that a utilities check for the address 271 Champlain Street indicated that the address was a downstairs apartment, rather than a building containing multiple apartments. (Swain's Aff. at 6).

The next question to determine is whether the application adequately demonstrates probable cause to believe that evidence of cocaine distribution would be found in the downstairs apartment. I believe that it does. First, according to Swain's affidavit, the confidential informant identified the location from which he purchased the cocaine as 271 Champlain Street (which the affidavit identifies as the downstairs apartment). Officer Swain further affirms that he observed the informant walk to the east side of 271 Champlain Street and, on the occasion of the second purchase, saw him approach a boarded window on that side. When the informant returned to the undercover vehicle, he advised Swain that he had in fact walked up to the boarded window and had purchased cocaine through that first floor window. Considering that the purchases were made from a "walk-up" window, Judge Geraci reasonably concluded that the individual on the other side of the window was in the downstairs apartment. Accordingly, considering Swain's affidavit in its totality, I find that Judge Geraci had a substantial basis for concluding that probable cause existed to believe that evidence of cocaine distribution would be found at 271 Champlain Street, downstairs apartment.

Moreover, Johnson has failed to offer any evidence that the searching officers did not rely on the warrant in good faith. *See United States v. Leon*, 468 U.S. 897 (1984). Nothing in the record suggests that the issuing judge was knowingly misled or that he wholly abandoned his judicial role. *See id.* at 923. Nor was the warrant so facially deficient or so lacking in probable cause that reliance upon it would have been unreasonable. *See id.*; *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted). Accordingly, it is my recommendation that Johnson's motion to suppress evidence seized from 271 Champlain Street, downstair apartment, be denied.

## II. Suppression of Statements

Johnson also moves to suppress the statements made by him to Officer Simpson during the interview at the Public Safety Building following his arrest. According to Johnson, such statements were made involuntarily and in violation of his Fifth Amendment rights. (Docket # 16).

It is, of course, well-settled that statements made during custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right. *Miranda v. Arizona*, 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official
> questions an individual and that questioning was (1) conducted in
> custodial settings that have inherently coercive pressures that tend

> to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

In the case at bar, the government does not contest that Johnson was in custody or that he was subject to custodial interrogation. The question therefore is whether Johnson waived his constitutional rights before speaking with Officer Simpson.

To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The record before this Court, including the testimony of Officer Simpson, reveals that upon entering the interview room, Simpson introduced himself to Johnson and asked him about his family and his background. (Tr. 6). Before questioning him about the events at 271 Champlain Street, Simpson advised Johnson of his *Miranda* rights by reading from a *Miranda* waiver card. (Tr. 7-8). Afterward, Simpson asked Johnson whether he understood his rights and whether he wished to speak. Johnson responded affirmatively to both questions. (Tr. 8-9). According to Simpson, Johnson did not appear to be under the influence of alcohol or drugs. Johnson further appeared to understand what was being said to him, and he responded appropriately to the questions posed to him. (Tr. 9).

Following Johnson's waiver of his *Miranda* rights, Simpson questioned him about his presence at 271 Champlain Street and his involvement in narcotics activity occurring at that address. (Tr. 10-11). The entire interview lasted approximately thirty minutes. Johnson was not threatened, nor were any promises made to him in order to induce him to speak. At no time did Johnson request the assistance of an attorney. (Tr. 11-12).

On this record, I find that Johnson's waiver of his constitutional rights was knowing and voluntary. I therefore recommend denial of Johnson's motion to suppress statements on the grounds that they were obtained in violation of his Fifth Amendment rights.[7]

## CONCLUSION

For the foregoing reasons, it is my recommendation that Johnson's motion to suppress tangible evidence seized from 271 Champlain Street **(Docket # 16)** be **DENIED**. It is my further recommendation that Johnson's motion to suppress statements **(Docket # 16)** be **DENIED**.

                              *s/Marian W. Payson*
                              MARIAN W. PAYSON
                              United States Magistrate Judge

Dated: Rochester, New York
         January __19__, 2007

---

[7] Johnson also argues that his statements should be suppressed because they are the fruit of an unlawful search of 271 Champlain Street. Because I find that the search warrant for 271 Champlain Street was supported by probable cause, it is my further recommendation that Johnson's motion to suppress statements on this grounds be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

    **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

    **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[8]

    The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

    **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

    The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

    Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                                *s/Marian W. Payson*
                                                                 MARIAN W. PAYSON
                                                             United States Magistrate Judge

Dated: Rochester, New York
         January  19 , 2007

---

[8] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).